J-A22031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| QUADRE T. RIVERS | : | |
| | : | |
| Appellant | : | No. 1330 EDA 2017 |

Appeal from the Judgment of Sentence March 10, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0008582-2015

BEFORE:   BENDER, P.J.E., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED OCTOBER 16, 2018**

Appellant Quadre T. Rivers appeals from his conviction for terroristic threats.[1]  Appellant challenges the sufficiency of the evidence.  We affirm.

The trial court summarized the testimony from the trial as follows:

[Ms. Holmes testified that] [s]he and [A]ppellant were in a relationship and had been for seven years, and that the events that had unfolded occurred during an evening and the following morning at [Appellant]'s home, specifically in [Appellant]'s bedroom, following sex.  Ms. Holmes testified that she saw something in [Appellant]'s cell phone and [Appellant] then demanded the phone back at which time a 'scuffle' began.  N.T. 3-10-17, pp. 15-18.  Ms. Holmes testified that she was on the bed and [Appellant] was standing over her and [Appellant] put his hands on her shoulders and that as she tried to use her hands to push [Appellant] off, he choked her using one hand around her neck, making it difficult for her to breathe.  Appellant then left to

---

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2706(a)(1).

take a walk and returned 15 minutes later. N.T. 3-10-17, pp. 18-21.

Ms. Holmes stated that when [Appellant] returned they "started tussling and fighting again." Appellant then pushed her with his hands against her shoulders and chest and she told him to stop. Appellant then put his hands on her neck again. N.T. 3-10-17, p. 22. Ms. Holmes testified that [Appellant] "grabbed my neck quite a few times that day." N.T. 3-10-17, p. 20. Following the second fight, Appellant asked Ms. Holmes to leave his house around 12:30 am[,] but Ms. Holmes testified that she did not leave because she had no transportation and the buses were not running. N.T. 3-10-17, p. 23. Ms. Holmes then stayed and slept in bed with [Appellant]. When she awoke, [Appellant] accused her of putting his phone in water[2] and they began to argue and [Appellant] then "threatened to smack the S out of me." Appellant then refused to allow Ms. Holmes to leave his house until she promised to return with money for weed, cigarettes and tokens. Ms. Holmes agreed to do so and [A]ppellant then allowed her to leave his house. N.T. 3-10-17, pp. 24-26.

Two days later, on July 29, 2017, Ms. Holmes went to Mercy Hospital and presented herself with a complaint of neck pain, stating that she had been choked on Sunday and now had difficulty swallowing. Her diagnosis was neck strain and sprain. She was given Naproxen and Tylenol and was discharged. ***See*** Stipulation of Counsel, N.T. 3-10-17, pp. 38-39. Ms. Holmes testified that her neck pain remained for about a week, with medication. N.T. 3-10-17, p. 24. Although the hospital report did not indicate any complaint of being bit, Ms. Holmes did go to the police later that same day to report the occurrence at which time a detective took photographs of a bite on Ms. Holmes' right upper arm, which were admitted into evidence at trial. N.T. 3-10-17, pp. 27-28.

Trial Ct. Op., 7/31/17, at 3-4.

_____

[2] At trial, Ms. Holmes testified that when she woke up, Appellant's phone was near a cup of water. ***See*** N.T., 3/10/17, at 25. At the time, Appellant accused her of putting the phone ***in*** the water. ***Id.***

Following a bench trial on March 10, 2017, Appellant was convicted of terroristic threats with intent to terrorize another, simple assault, recklessly endangering another person, and harassment.[3] That same day, Appellant was sentenced to two years' probation. Appellant subsequently filed a timely post-sentence motion, which the trial court denied on March 22, 2017. On April 21, 2017, Appellant filed a timely notice of appeal. Both the trial court and Appellant subsequently complied with Pa.R.A.P. 1925.[4]

Appellant raises one question on appeal:

> Was not the evidence insufficient for conviction of terroristic threats, as [Appellant] never communicated any threat to commit a crime of violence with the settled intent to terrorize another, and any statements that were made were the result of transitory anger of the kind that cannot sustain a conviction for this offense?

Appellant's Brief at 3.

Appellant does not dispute that he threatened Ms. Holmes. Instead, he argues that when viewed in context, his statement was "a spur-of-the-moment threat resulting from anger of the sort explicitly meant to be excluded from criminal liability." *Id.* at 10. Appellant relies on ***Commonwealth v. Walls***, 144 A.3d 926 (Pa. Super. 2016), and concludes "there is no evidence

---

[3] 18 Pa.C.S. §§ 2706(a)(1), 2701(a), 2705, and 2709(a)(1), respectively.

[4] Appellant filed a motion for an extension of time to file his court-ordered Pa.R.A.P. 1925(b) statement. The docket does not reflect that the court ever granted or denied Appellant's request. The trial court, however, considered Appellant's Pa.R.A.P. 1925(b) statement as timely filed and addressed the merits of the appeal. Accordingly, we decline to find waiver. ***See Commonwealth v. Brown***, 145 A.3d 184, 186 (Pa. Super. 2016).

whatsoever that the threatening statement was made with any kind of intent to terrorize or was anything other than the momentary product of anger." ***Id.*** at 9.

Our standard of review for sufficiency of the evidence claims is well-settled. "The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Edwards***, 177 A.3d 963, 969 (Pa. Super. 2018) (citation omitted). In assessing Appellant's sufficiency challenge, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Sweitzer***, 177 A.3d 253, 257 (Pa. Super. 2017) (citation omitted). Additionally, we note that

> [t]he evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

***Commonwealth v. Tarrach***, 42 A.3d 342, 345 (Pa. Super. 2012).

Section 2706(a)(1) of the Crimes Code provides, in pertinent part:

> A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

> (1) commit any crime of violence with intent to terrorize another[.]

18 Pa.C.S. § 2706(a)(1).

To sustain a conviction for terroristic threats, the Commonwealth must prove: (1) "the defendant made a threat to commit a crime of violence[;]" and (2) "the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." *Commonwealth v. Tizer*, 684 A.2d 597, 600 (Pa. Super. 1996). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." *In re J.H.*, 797 A.2d 260, 262 (Pa. Super. 2002) (citation omitted). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." *Tizer*, 684 A.2d at 600.

We have recognized that terroristic threats is not intended to punish "statements in the context of a heated discussion." *Commonwealth v. Walker*, 836 A.2d 999, 1001 (Pa. Super. 2003). However, the mere fact that statements were made out of anger does not render the speaker incapable of forming an intent to terrorize. *Id.* We examine the totality of the circumstances in determining if Appellant had the necessary intent. *Commonwealth v. Reynolds*, 835 A.2d 720, 730 (Pa. Super. 2003).

In *Walls*, we vacated a conviction for terroristic threats where the appellant approached an assistant district attorney at a shopping mall and accused her of sending him to jail for a crime he did not commit. *Walls*, 144

A.3d at 926. As he was escorted out of the store, he yelled at the prosecutor that she should die. *Id.* In reviewing the sufficiency of the evidence to support the conviction, we stated:

> When two parties have an unplanned, heated confrontation, a threat made during the confrontation is often a spur-of-the-moment threat made during a period of transitory anger. For example, in *Commonwealth v. Sullivan*, 269 Pa. Super. 279, 409 A.2d 888 (1979), the defendant called the state police and threatened to kill the local sheriff. *Id.* at 888–889. The next day, the defendant encountered the local sheriff on the street, and during a shouting match, [the defendant] threatened to kill the sheriff. *Id.* at 889. The defendant was convicted of two counts of terroristic threats—one count for each incident. On appeal, this Court reversed and found that the evidence was insufficient to find [the defendant] guilty on either count. As to the second count, involving the defendant's encounter with the sheriff, this Court held that the threat was made as part of a chance argument on a public street and that the defendant did not have the settled purpose of terrorizing the local sheriff. *See id.* at 889–890.
>
> . . . What we find instructive about *Sullivan*, however, is that, as in the case at bar, the defendant encountered an official in public, a heated confrontation followed, and the defendant made a threat during that heated confrontation. Thus, it was the chance nature of the parties' meeting and the spontaneous anger that the encounter instilled in the defendant that links the facts in the present case to those before this Court in *Sullivan*. Just as *Sullivan* found the evidence insufficient to support a terroristic threats conviction, we do so here as well.

*Id.* at 937. We further noted that the appellant "did not specifically threaten harm to [the victim] presently or in the future." *Id.* at 938

Here, in concluding there was sufficient evidence presented at trial, the trial court explained that

> Ms. Holmes testified that [Appellant] threatened "to smack the S" out of Ms. Holmes on the morning following his assault on her.

- 6 -

> Given the events of the previous evening, this [c]ourt found that [Appellant's] statement to Ms. Holmes was not the result of transitory anger but were made to convey the threat of continued violence with the settled intent to terrorize her.

Trial Ct. Op., 7/31/17, at 5-6.

We agree. As indicated by the trial court, Appellant physically assaulted Ms. Holmes during an altercation on the night of July 27, 2017. *See* N.T., 3/10/17, at 26. Specifically, Appellant choked Ms. Holmes with enough force to cause a neck injury. *Id.* at 39. Appellant also bit Ms. Holmes under her arm, which broke her skin. *Id.* at 23. Then, the following morning, Appellant threatened to "smack the S out of" Ms. Holmes when he mistakenly concluded that she had placed his cell phone in water. *Id.* at 25. He then refused to let her leave his home until she promised to return with money for marijuana, cigarettes, and tokens. *Id.* at 26.

Accordingly, viewing the totality of circumstances surrounding Appellant's threat in the light most favorable to the Commonwealth, the evidence was sufficient to prove that Appellant intended to terrorize Ms. Holmes when he threatened to physically assault her. Unlike **Walls**, Appellant's statement was not the result of a spontaneous encounter. Rather, Appellant threatened Ms. Holmes shortly after she awoke at Appellant's home, which was hours after he physically assaulted her during another confrontation. Therefore, Appellant's claim lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/16/18</u>