J-S26011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| SCOTT DAVID GILBERT | |
| Appellant | No. 1748 MDA 2016 |

Appeal from the Judgment of Sentence September 26, 2016
In the Court of Common Pleas of Adams County
Criminal Division at No(s): CP-01-CR-0001065-2015

BEFORE:  BOWES, DUBOW, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                         **FILED JULY 14, 2017**

Scott Gilbert appeals from the judgment of sentence of four to twenty-three months incarceration imposed following his bench convictions for terroristic threats, simple assault by physical menace, and disorderly conduct.  We affirm.

This case involves a road rage incident, with the victim and Appellant offering quite different versions of who was the aggressor.  The evidence produced at trial was as follows.  Brian Hunter was driving on Race Track Road when he encountered Appellant's vehicle ahead of him.  N.T., 4/18/16, at 5.  Mr. Hunter stated that Appellant was driving slowly, and Mr. Hunter maintained a distance of one to two car lengths.  *Id*. at 7.  Appellant turned onto Kinneman Road, with Mr. Hunter following.  Appellant then gestured

---

* Former Justice specially assigned to the Superior Court.

with his hands in a flailing fashion about six times while the cars continued on Kinneman. *Id*. at 8. Approximately one and a half miles down the road, the parties reached the intersection of Kinneman and Cherry Tree Lane. Appellant, who lived at the house closest to the intersection of these roads, pulled to the side. Mr. Hunter waited "because I thought the vehicle pulled aside and I was going to go around at that point." *Id*. at 9. Appellant then rapidly accelerated, drove sharply across both Kinneman Road and Mr. Hunter's vehicle, and pulled into his driveway.[1] *Id*. at 9.

Mr. Hunter drove about fifteen feet and then stopped his vehicle. He explained that he stopped instead of continuing to drive "because I'm watching the erratic actions and I see somebody jump out of the vehicle. I mean, like right away." *Id*. at 11. Appellant, who had parked his vehicle in the driveway of his house, then ran towards Mr. Hunter and yelled, "You want to f*** with the handicap[ped]?"[2] Mr. Hunter saw Appellant raise his hand, which was holding what appeared to be a black firearm, and pointed it towards Mr. Hunter, from a distance of approximately twenty feet. *Id*. at 14. Mr. Hunter said that Appellant, who was standing on a grassy area of his lawn, said "[s]omething about blowing my fu**ing head off." *Id*. at 16-

---

[1] Mr. Hunter was unaware that Appellant lived on Cherry Tree Lane, as neither man knew each other.

[2] Appellant's license plate had a handicap designation.

17. Mr. Hunter feared for his life and drove away. Upon reaching his destination, Mr. Hunter called the police. *Id*. at 16. A State Trooper proceeded to Appellant's house and spoke to Appellant, who turned over the weapon, which was a BB gun that looked like a real firearm.

Appellant's testimony largely agreed with the sequence of events concerning Mr. Hunter following Appellant's vehicle. However, Appellant testified that he merely pointed his finger to the rearview mirror to indicate displeasure with Mr. Hunter following so closely. *Id*. at 40. He also denied cutting off Mr. Hunter when turning onto Cherry Tree Lane. He agreed that he had slowed down, but said he did so because two small children were riding bicycles and he waited until it was safe to turn. *Id*. at 42. According to Appellant, he parked his vehicle and then noticed Mr. Hunter had stopped his vehicle instead of continuing on Kenneman.

Appellant claimed that he yelled at Mr. Hunter, "[Y]ou're the son of a bitch who likes to harass permanently disabled American citizens?" due to anger that Mr. Hunter had followed him so closely. At this point, Mr. Hunter exited his vehicle "and stood there like he was expecting something from me." *Id*. at 43. Appellant told Mr. Hunter he would report the incident to the police, with Mr. Hunter replying, "[Y]ou ain't getting my license plate number." *Id*. Appellant agreed that he pulled his BB gun, but stated that he pointed it directly at the ground and only did so because he was scared of Mr. Hunter. *Id*. at 44.

The trial judge found Appellant guilty and imposed the aforementioned sentence. Following denial of Appellant's post-sentence motions, a timely notice of appeal was lodged. The trial court and Appellant complied with Pa.R.A.P. 1925, and the matter is now ready for review. Appellant presents the following issues for our consideration.

I. Whether the Commonwealth disproved justification beyond a reasonable doubt?

II. Whether the Commonwealth proved beyond a reasonable doubt that Appellant had the requisite *mens rea* to commit the crimes of terroristic threats and simple assault by physical menace?

Appellant's brief at 7. Appellant's substantive arguments largely overlap. Appellant claims that either (1) he was justified when threatening Mr. Hunter with the BB gun by virtue of a lawful entitlement to use force and therefore established a defense to the crimes which the Commonwealth did not disprove beyond a reasonable doubt, or, in the alternative, (2) he was so scared of Mr. Hunter that he lacked the requisite *mens rea* for the respective crimes, and hence the evidence was insufficient to convict. Thus, while phrased differently for legal purposes, both arguments rely on the same factual predicate, *i.e.*, Mr. Hunter was the aggressor and posed a credible threat of violence.

To support his justification theory, Appellant cites 18 Pa.C.S. § 505, permitting the "use of force upon or toward another person . . . when the actor believes that such force is immediately necessary for the purpose of

- 4 -

protecting himself against the use of unlawful force[.]" 18 Pa.C.S. § 505(a).

In ***Commonwealth v. Torres***, 766 A.2d 342 (Pa. 2001), our Supreme

Court explained:

> The use of force against a person is justified when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person. ***See*** 18 Pa.C.S. § 505(a). When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt. While there is no burden on a defendant to prove the claim, before the defense is properly at issue at trial, there must be some evidence, from whatever source, to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

***Id***. at 345 (citations omitted).[3]

Appellant points to his testimony as the basis for the conclusion that

Mr. Hunter was the aggressor, as indicated by the following passage:

> Appellant testified that when he saw Hunter coming toward him, he retrieved the unloaded BB gun from his vehicle in order to diffuse [*sic*] the situation. Upon seeing what looked like a real handgun, Hunter got in his car and drove away. Appellant stated that he obtained the BB gun because of a concern for his own safety. Hunter was a much larger and younger man. Appellant's statements alone were sufficient to raise the issue of self-protection or justification.
>
> . . . .
>
> **The Commonwealth failed to prove beyond a reasonable doubt that Appellant did not have a genuine and reasonable belief that he was in danger of bodily injury**

---

[3] Generally stated, justification is synonymous with self-defense and we shall use the terms interchangeably.

**when he saw Hunter, a much larger and younger man, rapidly approaching him after a heated road-rage incident** and retrieved his unloaded BB gun to ward off this individual. Accordingly, Appellant's convictions should be discharged.

Appellant's brief at 15-16 (emphasis added).

As stated, Appellant's second issue is effectively an extension of the foregoing argument, although in the context of a sufficiency of the evidence claim. He claims that, since he acted for the permitted purpose of self-defense, the Commonwealth failed to offer sufficient evidence supporting the verdict. "The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Gezovich*, 7 A.3d 300, 301 (Pa.Super. 2010).

"The elements necessary to establish a violation of the terroristic threats statute are: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize[.]" *Commonwealth v. Walls*, 144 A.3d 926, 936 (Pa.Super. 2016) (citation omitted). We have recognized that the statute does not punish "statements in the context of a heated discussion." *Commonwealth v. Walker*, 836 A.2d 999, 1001 (Pa.Super. 2003). However, the mere fact that statements were made out of anger does not render the speaker incapable of forming an intent to terrorize. *Id*. We examine the totality of the circumstances in

determining if Appellant had the necessary *mens rea*. ***Commonwealth v. Reynolds***, 835 A.2d 720, 730 (Pa.Super. 2003).

With respect to simple assault by physical menace, the actor must "attempt by physical menace to put another in fear of imminent serious bodily injury." 18 Pa.C.S. § 2701(a)(3). We have previously held that pointing a gun at a person constitutes simple assault by physical menace. ***See Commonwealth v. Little***, 614 A.2d 1146 (Pa.Super. 1992).

Preliminarily, we note that Appellant does not cite a case holding that a justification defense is viable for either crime. Unsurprisingly, self-defense cases commonly involve an actual use of force, not just an implied threat of force or a show of force that deters the assailant. Accordingly, self-defense is arguably not a valid defense to terroristic threats, which necessarily requires that the pertinent act was committed with an intent to terrorize, which seems diametrically opposed to an act that is committed for the "purpose of protecting . . . against the use of unlawful force[.]" 18 Pa.C.S. § 505; ***Torres***, ***supra***. If we accept that Appellant's act of pointing the BB gun was to deter Mr. Hunter from a pending violent attack, then by necessity the intent was not to terrorize but to dissuade. ***See Reynolds***, ***supra*** at 731 ("[A]ppellant did not act in self-defense, but instead threatened the victims with a gun after one of the victims insulted his wife. Such circumstances are not indicative of self-defense."). The foregoing logic

equally applies to the crime of simple assault by physical menace, which requires the actor to put another in fear of imminent serious bodily injury.

We need not firmly resolve whether self-defense is viable for the respective crimes as both of Appellant's arguments hinge upon a finding that Appellant was not the aggressor, a finding that the trial court clearly resolved against Appellant.

> This [c]ourt's guilty verdict reflected its judgment after considering the weight of the evidence. In viewing the evidence in the light most favorable to the Commonwealth, the evidence includes all of the offense elements and supports a guilty verdict.
>
> Appellant also alleges that the Commonwealth failed to disprove beyond a reasonable doubt that Appellant was justified in his use of force and entitled to stand his ground. In order to properly raise the defense of self-defense, the defendant must provide "some evidence, from whatever source, to justify such a finding." If the defendant properly raises the defense of self-defense under Section 505 of the Pennsylvania Crimes Code, it is the Commonwealth's, and not the defendant's, burden to prove beyond a reasonable doubt that the "defendant's act was not justifiable self-defense."
>
> The Commonwealth can sustain this burden by proving at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.
>
> . . . .
>
> Instantly, Appellant did not provide evidence to justify raising self-defense as an issue. According to Appellant, Mr. Hunter exited his vehicle and "stood there like he was expecting something from Appellant." When asked if he was afraid for his safety when Mr. Hunter allegedly got out of his vehicle, Appellant stated, "Large man. I'm only five foot ten. He's over six foot."

- 8 -

Appellant also testified that after he pointed the gun at Mr. Hunter, Mr. Hunter drove away. **At no point did Appellant testify that Mr. Hunter threatened him, brandished a weapon, made any aggressive movement toward him, or did anything to justify raising self-defense as an issue**.

Trial Court Opinion, 12/19/16, at 5-6 (emphasis added, footnotes and citations omitted). Since the trial court sat as fact-finder, its credibility findings bind us. *See Commonwealth v. Safka*, 141 A.3d 1239, 1249 (Pa. 2016) (in bench trial, the trial court acts "as the fact-finder, affording weight to the admissible evidence"); *Gezovich*, *supra* at 301 ("In applying the [sufficiency] test, we may not weigh the evidence and substitute our judgment for the fact-finder.").

The trial court could have credited Appellant's testimony that Mr. Hunter was the aggressor, but the fact remains that the judge did not do so. We must apply the law to the facts as they are, not the facts as Appellant wishes them to be. "Appellant's arguments . . . are not based upon the evidence, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner. Instead, they focus upon evidence *viewed in a light most favorable to himself*, including evidence rejected by the trial court as not credible." *Commonwealth v. Emler*, 903 A.2d 1273, 1277 (Pa.Super. 2006) (emphasis in original). The trial court determined that "Appellant was the individual who approached the victim's vehicle and escalated the situation by threatening the victim with a gun. No action that Appellant took during this

confrontation was justifiable self-defense." Trial Court Opinion, 12/19/16, at 7-8. Those are the facts that we must examine, not the alternative scenario proffered by Appellant.

Thus, even assuming *arguendo* that Appellant would have been entitled to justify the commission of these crimes, the trial court rejected the predicate facts needed to establish that defense. The same is true with respect to the challenge to the *mens reas*. The trial court found that Appellant engaged Mr. Hunter, who had remained in his vehicle at all times, pointed a BB gun at the victim that resembled a real firearm, and threatened to blow his head off. The totality of these circumstances sufficed to establish that Appellant intended to terrorize Mr. Hunter, and that the statements were not made in anger.[4] Therefore, these facts suffice to establish the elements of simple assault by physical menace and terroristic threats, and we therefore affirm.

---

[4] Appellant remarks that his "alleged comments were in the heat of the moment. They were not intended to terrorize Hunter but only to strongly encourage him to leave[.]" Appellant's brief at 17. To repeat our observations *supra* regarding justification, a claim that Appellant's comments were the product of anger seems to be incompatible with a claim that he genuinely feared Mr. Hunter posed a threat. He acted out of anger or fear, but not both simultaneously.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2017