J-S49043-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| DEMETRIUS HOUSER | |
| Appellant | No. 208 WDA 2017 |

Appeal from the Judgment of Sentence January 6, 2017
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s):  CP-65-CR-0001621-2015

BEFORE: DUBOW, SOLANO, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                FILED: November 13, 2017

Appellant, Demetrius Houser, appeals from the judgment of sentence entered in the Westmoreland County Court of Common Pleas following his jury trial convictions for drug delivery resulting in death,[1] intentionally possessing a controlled substance,[2] possession with intent to deliver a controlled substance,[3] delivery of a controlled substance,[4] and criminal use

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 2506(a).

[2] 35 P.S. § 780-113(a)(16).

[3] 35 P.S. § 780-113(a)(30).

[4] 35 P.S. § 780-113(a)(30).

of a communication facility.[5] He argues that the evidence was insufficient to support his conviction. We affirm.

We adopt the facts and procedural history set forth by the trial court's opinion. See Trial Ct. Op., 3/16/17, at 1-5. Following Appellant's conviction of the above referenced charges, the trial court sentenced him to a term of five to twenty years' imprisonment based upon his conviction for drug delivery resulting in death, with all other counts merging for sentencing purposes. Appellant timely appealed, and both Appellant and the trial court complied with Pa.R.A.P. 1925(b).

Instantly, Appellant raises the following issue for review:

> I. Whether the jury's verdict of guilty at all counts was rendered with sufficient evidence to sustain a conviction?

Appellant's Brief at 5.

When evaluating a challenge to the sufficiency of the evidence:

> [W]e view the evidence in the light most favorable to the Commonwealth together with all reasonable inferences from that evidence, and determine whether the trier of fact could have found that every element of the crimes charged was established beyond a reasonable doubt.

Commonwealth v. Walker, 836 A.2d 999, 1000 n.3 (Pa. Super. 2003) (citations omitted).

Appellant argues that the evidence present at trial failed to establish that the victim died due to ingesting drugs he supplied. To that end,

---

[5] 18 Pa.C.S. § 7512(a).

Appellant avers that the Commonwealth failed to thoroughly investigate the victim's home and eliminate the possibility that the victim died due to drugs he supplied. No relief is due.

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Christopher A. Feliciani, we conclude the trial court's opinion comprehensively discusses and properly disposes of the issue presented. See Trial Ct. Op. at 5-9 (finding that the evidence was sufficient to sustain Appellant's convictions where testimony and phone records supported the contention that Appellant sold the drugs in question that resulted in the death of the victim). Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/13/2017

# IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA – CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
)
VS. )      No.  1621 C 2015
)
DEMETRIUS HOUSER, )
                          Defendant. )

## OPINION AND ORDER OF COURT
## ISSUED PURSUANT TO PA.R.A.P. RULE 1925(A)

The defendant, Demetrius Houser, appeals from the judgment of sentence entered January 6, 2017, wherein he was sentenced to five (5) to twenty (20) years at the Department of Corrections and related terms, costs, and conditions.  This Opinion is issued in compliance with Pa.R.A.P. Rule 1925.

## FACTUAL HISTORY

The charges in this case arose from the death of 31-year-old Christina Racioppo on January 23, 2014, in Lower Burrell, Westmoreland County.  The evidence presented at trial established that on January 23, 2014, Ms. Racioppo was found deceased in the master bathroom of her home as a result of a drug overdose.  During trial, Dr. Cyril Wecht, who was admitted as an expert in forensic pathology, testified that in his opinion, Ms. Racioppo died as a result of the combined toxic effect of fentanyl and morphine in her system.  (Trial Transcript "TT" 10/3/16-10/7/16 at 408.)

At trial, Detective Hugh Shearer, who was admitted as an expert in crime scene processing, testified that on January 23, 2014, he was dispatched to Ms. Racioppo's residence in Lower Burrell regarding a suspected overdose.  Id.  at 272.  Upon arrival, Detective Shearer

1



spoke with Lower Burrell Police Department Detectives Robert Galvanek and Scott Cardenas. Id. at 276. Detective Galvanek testified that he applied for a search warrant of the decedent's home. Id. at 597. After the search warrant was obtained, Detective Shearer and Detective Cardenas testified that they began their investigation of the house. Id. at 282, 344. The detectives testified that they located Ms. Racioppo's body in the master bedroom. Id. at 284, 347. Through their investigation, the detectives located cloth belts in the master bathroom and syringes, silver spoons, and an empty stamp bag marked "Theraflu" in a drawer in the master bedroom. Id. at 304-310, 349-353. Prior to trial, the parties stipulated to the admission of the Pennsylvania State Police Crime Lab Test results, which revealed that the stamp bag was positive for heroin and fentanyl. *See Commonwealth's Exhibit 36.*

During trial, Derek Miller testified that he was dating and living with Ms. Racioppo at the time of her death. Id. at 175. Mr. Miller indicated that both he and Ms. Racioppo used heroin together and their preferred method was through injection. Id. at 176-179. Mr. Miller testified that on January 21, 2014, he contacted his friend Kristy Guzzi through text message and requested heroin. Id. at 183-185. Mr. Miller testified that he met with Ms. Guzzi and gave her money for the drugs. Id. at 186-188. Mr. Miller testified that after leaving and coming back, Ms. Guzzi gave him stamp bags marked Theraflu, and he and Ms. Racioppo split up the drugs. Id. On the next day, January 22, 2014, Mr. Miller testified that he reached out to Ms. Guzzi once more requesting Theraflu and he and Ms. Racioppo met Ms. Guzzi, paid her money, and when she returned, they received 9 stamp bags of Theraflu. Id. at 196-200. Mr. Miller testified that he and Ms. Racioppo then went back to Ms. Racioppo's home and used some of the Theraflu throughout the evening. Id. at 202.

Mr. Miller testified that he and Ms. Racioppo went to sleep at approximately 2:00-3:00 a.m. on January 23, 2014, and he woke up at approximately 8:00 a.m. to find Ms. Racioppo unconscious in the bathroom due to an overdose. Id. at 204-205. Mr. Miller indicted that he called 911 thirty seconds after finding Ms. Racioppo. Id. at 208. When the police arrived, Mr. Miller first testified that he told them Ms. Racioppo got the Theraflu from a guy named "T." Id. at 210. Later, when confronted, Mr. Miller indicated that he got the drugs from Ms. Guzzi. Id. at 212. Pursuant to a search warrant, Mr. Miller's phone was seized and the records were preserved. *See Commonwealth's Exhibit 2.*

At trial, Ms. Guzzi confirmed that she delivered Theraflu to Mr. Miller on January 21 and 22, 2014. Id. at 448, 471. Ms. Guzzi testified that once she received the money from Mr. Miller, she went to New Kensington and bought the Theraflu from the defendant, Demetrius Houser, who she knew as "Young Buck." Id. at 438-439, 464-466. Ms. Guzzi testified that she has seen Mr. Houser numerous times and knows his face. Id. at 439-443. Ms. Guzzi testified that initially she told the detectives that she bought the drugs from a person named 'Buku;" however, later, after the detectives discovered she was lying, Ms. Guzzi told them that she bought the Theraflu from Mr. Houser, despite not knowing his actual name at that time. Id at 479-484. Ms. Guzzi provided the detectives with a phone number she used to reach Mr. Houser. Id. As a result of Ms. Racioppo's death, both Mr. Miller and Ms. Guzzi were also charged with Drug Delivery Resulting in Death.

Harrison Township Police Department Sergeant Brian Turack testified that he came in contact with Mr. Houser on April 17, 2014 and found him to be in possession of four cell phones. Id. at 526-527. Sergeant Turack located one cell phone in Mr. Houser's right front jean pocket. Id. at 528. The official number associated with that cell phone matched the number Ms.

3

Guzzi provided to the detectives. Id. Detective Galvanek testified that, he spoke with Mr. Houser on February 26, 2015. Id. at 654. Through his investigation, Detective Galvanek testified that Mr. Houser indicated that he received a text message on his phone from Michael Guzzi and Mr. Houser confirmed his phone number, which was identical to the number provided by Ms. Guzzi and Sergeant Turack. Id. at 656-7.

After an on the record colloquy, Mr. Houser elected not to testify at trial. Id. at 781-785.

## PROCEDURAL HISTORY

On or about April 7, 2015, Mr. Houser was charged with the following offenses:

1. Count One: Drug Delivery Resulting in Death, in violation of 18 Pa.C.S.A. § 2506(a).
2. Count Two: Intentionally Possessing a Controlled Substance by Person Not Registered, in violation of 35 P.S. 780-113 § (a)(16).
3. Count Three: Possession With Intent to Deliver a Controlled Substance, in violation of 35 P.S. 780-113 (a)(30).
4. Count Four: Delivery of a Controlled Substance, in violation of 35 P.S. 780-113 (a)(30).
5. Count Five: Criminal Use of a Communication Facility, in violation of 18 Pa.C.S.A. § 7512(a).

After the preliminary hearing, all above counts were held for court. On October 3-7, 2016, Mr. Houser proceeded to a jury trial before this Court. During trial, Mr. Houser was represented by Attorney Brian Aston. On October 7, 2016, the jury returned a verdict of guilty of all criminal offenses, and sentencing was deferred pending a Pre-Sentence Investigation. On January 3, 2017, Mr. Houser filed a Motion for Judgment of Acquittal. On January 6, 2017, Mr. Houser was sentenced at Count One to five (5) to twenty (20) years incarceration at the Department of Corrections. Counts Two, Three, and Four merged with Count One for purposes of sentencing. At Count Five, there was no further sentence. Mr. Houser was also given credit

4

for time served, and restitution was documented. The Motion for Judgment of Acquittal was denied on the same day.

On January 30, 2017, Mr. Houser filed a timely Notice of Appeal to the Pennsylvania Superior Court. On February 15, 2017, this Court ordered Mr. Houser to file a Concise Statement of Errors Complained of on Appeal. On or about February 24, 2017, Mr. Houser filed said statement and raised the following issue: (1) Whether the jury's verdict of guilty at all counts was rendered with sufficient evidence to sustain a conviction. This appeal is before the Pennsylvania Superior Court at 208 WDA 2017.

## ISSUES PRESENTED ON APPEAL

### I. WHETHER THE JURY'S VERDICT OF GUILTY AT ALL COUNTS WAS RENDERED WITH SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION.

Mr. Houser's sole allegation of error asserts that the jury's verdict of guilty at all counts in the above-referenced case was rendered without sufficient evidence to sustain a conviction. "To evaluate [a] sufficiency of evidence [claim], [a Court] must view the evidence in the light most favorable to the Commonwealth as verdict winner, accept as true all the evidence and reasonable inferences upon which, if believed, the jury could properly have based its verdict, and determine whether such evidence and inferences are sufficient in law to prove guilt beyond a reasonable doubt." Commonwealth v. Bundridge, 449 A.2d 681 (Pa. Super. 1982.) "[W]here there is an insufficiency of evidence determination, the only remedy is the discharge of the defendant for the crime or crimes charged." Commonwealth v. Vogel, 461 A.2d 604 (Pa. 1983.)

In the present case, Mr. Houser was charged at Count One with Drug Delivery Resulting in Death, in violation of 18 Pa.C.S.A. § 2506(a). At trial, the Commonwealth alleged that Mr. Houser delivered drugs to Kristy Guzzi that resulted in the death of Christina Racioppo.

5

Title 18, Section 2506(a) states:

(a) **Offense defined.**--A person commits [drug delivery resulting in death,] a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L.233, No.64), known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S.A. § 2506(a).

At Count Two, Mr. Houser was charged with Intentionally Possessing a Controlled Substance by Person Not Registered, in violation of 35 P.S. 780-113 § (a)(16). At trial, the Commonwealth alleged that Mr. Houser possessed a combination of heroin and fentanyl.

Title 35, Section 780-113(a)(16) states:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited: (16) Knowingly or intentionally possessing a controlled or counterfeit substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, unless the substance was obtained directly from, or pursuant to, a valid prescription order or order of a practitioner, or except as otherwise authorized by this act.

35 P.S. 780-113 § (a)(16).

At Count Three Mr. Houser was charged with Possession with Intent to Deliver a Controlled Substance. Here, the Commonwealth alleged that Mr. Houser possessed a combination of heroin and fentanyl with the specific intent or goal of delivering the item to another. At Count Four, Mr. Houser was charged with Delivery of a Controlled Substance. Here, the Commonwealth alleged that Mr. Houser delivered a combination of heroin and fentanyl, a controlled substance, to Kristy Guzzi by means of delivery.

Title 35, Section 780-113(a)(30) states:

6

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited: (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. 780-113 § (a)(30).

Lastly, at Count Five, Mr. Houser was charged with Criminal Use of a Communication Facility, in violation of 18 Pa.C.S.A. § 7512(a). Here, the Commonwealth alleged that Mr. Houser used a communication facility, namely a cellular telephone to facilitate, the commission of the crime of Delivery of a Controlled Substance, which did in fact occur.

Title 18, Section 7512 states:

(a) **Offense defined.**-- A person commits [Criminal use of communication facility,] a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L.233, No.64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

(b) **Penalty.**--A person who violates this section shall, upon conviction, be sentenced to pay a fine of not more than $15,000 or to imprisonment for not more than seven years, or both.

(c) **Definition.**--As used in this section, the term "communication facility" means a public or private instrumentality used or useful in the transmission of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part, including, but not limited to, telephone, wire, radio, electromagnetic, photoelectronic or photo-optical systems or the mail.

18 Pa.C.S.A. § 7512.

This Court, having reviewed the entire record in this case and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, finds that the Commonwealth

7

has presented sufficient evidence to permit the jury, as trier of the facts, to find Mr. Houser guilty of all of the above-referenced charges. Despite defense counsel's contention that the Commonwealth's case is based upon speculation or conjecture, the Court finds that the Commonwealth has presented sufficient evidence to establish each element of each offense charged. At trial, the Commonwealth presented evidence establishing that Ms. Racioppo died and the cause of her death, as testified to by Dr. Wecht, was the result of the combined toxic effect of fentanyl and morphine in her system. Detectives Shearer and Cardenas testified that through their investigation, they located an empty Theraflu stamp bag in a drawer in the master bedroom just feet away from Ms. Racioppo's body. Prior to trial, the parties stipulated to the admission of the Pennsylvania State Police Crime Lab Test results, which revealed that the stamp bag was positive for heroin and fentanyl.

Mr. Miller testified at trial that the two days prior to Ms. Racioppo's death, he contacted Ms. Guzzi each day by cell phone and requested heroin. Mr. Miller testified, and Ms. Guzzi confirmed, that Mr. Miller paid Ms. Guzzi for the drugs and Ms. Guzzi left and came back with heroin stamp bags, identified as Theraflu. On January 22, 2014, one day prior to Ms. Racioppo's death, Mr. Miller testified that after he received the Theraflu from Ms. Guzzi, he and Ms. Racioppo split up the drugs and used throughout the evening. Mr. Miller testified that when he woke up in morning at approximately 8:00 a.m., he found Ms. Racioppo unconscious in the bathroom from an overdose. Phone records confirmed the conversations between Mr. Miller and Ms. Guzzi.

Despite initially lying to the detectives, Ms. Guzzi eventually informed the detectives that she received the Theraflu from Mr. Houser. Although she did not know his name at that time, Ms. Guzzi provided the detectives with a phone number for Mr. Houser. Sergeant Turack

8

testified that he came in contact with Mr. Houser and after obtaining a search warrant, he located the phone associated with the number in Mr. Houser's front jean pocket. Detective Galvanek testified that Mr. Houser confirmed that that was his phone number. Based on all of the evidence presented, the Court finds that the Commonwealth has presented sufficient evidence for the jury to find Mr. Houser guilty of Drug Delivery Resulting in Death, Intentionally Possessing a Controlled Substance by Person Not Registered, Possession With Intent to Deliver a Controlled Substance, Delivery of a Controlled Substance, and Criminal Use of a Communication Facility.

As such, the Court finds that this claim is without merit.

For the foregoing reasons, the issue raised on appeal is meritless, and the Court enters the following Order:

# IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA – CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    )
                                           )
                      VS.                )    No. 1621 C 2015
                                           )
DEMETRIUS HOUSER,            )
                      Defendant.    )

## ORDER OF COURT

AND NOW, to wit, this 15th day of March, 2017, it is hereby ORDERED, ADJUDGED, and DECREED that the foregoing Opinion shall constitute the Court's brief statement of reasons for the January 6, 2017 judgment of sentence pursuant to Pa. R.A.P. 1925.

BY THE COURT:

_____, J
Christopher A. Feliciani, Judge

ATTEST:

_____
Clerk of Courts

c.c.    File
       Peter Caravello, Esq., Assistant District Attorney
       Brian Aston, Esq., Counsel for the Defendant
       Pamela Neiderheiser, Esq., Court Administrator's Office
       Law Clerk