J-S85002-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TAYLOR QUINN SAMMY | : | |
| | : | |
| Appellant | : | No. 1671 WDA 2016 |

Appeal from the Judgment of Sentence October 6, 2016
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0004748-2015,
CP-02-CR-0004751-2015

BEFORE:  BOWES, J., PANELLA, J., and STABILE, J.

MEMORANDUM BY BOWES, J.:                    FILED APRIL 30, 2018

Talyor Quinn Sammy appeals from the judgment of sentence of concurrent five years probation, imposed following his convictions for terroristic threats, stalking, and harassment.  We affirm.

The two dockets at issue involve separate victims and crimes.  At case 4748 of 2015, the Commonwealth charged Appellant with one count each of terroristic threats, a misdemeanor of the first degree, and harassment, graded as a misdemeanor of the third degree, for his conduct towards Courtney Law.  At case 4751 of 2015, the Commonwealth charged Appellant with one count each of stalking, graded as a misdemeanor of the first degree, and harassment and criminal mischief, for his actions towards Faydra Heidkamp.  The latter two crimes were both charged as misdemeanors of the third degree.

These matters were consolidated for a non-jury trial, which took place on October 6, 2016. The trial court's opinion aptly summarizes the testimony adduced at that proceeding:

> At trial at CC20[1]5-04751 the Commonwealth presented the testimony of the victim who testified that she met Defendant, who was an employee at a shoe store at a local mall, while making a purchase. Defendant, using her name from the credit card, later contacted her via Facebook. She initially responded to him on Facebook and had casual conversations and he then asked her out on multiple occasions but she told him she was not interested in dating. She did eventually meet him for coffee, but then became uncomfortable with various messages that he was sending her. She asked him to "stop bothering me." Defendant responded by sending the victim messages using obscenities and threats. Additional messages from Defendant to the victim between December 14, 2014 and January 20, 2015 were admitted into evidence. The victim testified to the content of the messages stating
>
> > Just complete aggressiveness. When I, you know, tried to come to a point that I did not no longer want to be contacted and felt very scared, too, because of the nature of the threats that I was receiving and the text messages in terms of, you know, if you read them, you know, ["]you're a mean angry old bitch, you're white,["] I asked him to stop several times and he did not.
>
> The victim testified that after she blocked Defendant's phone number he called from another place of business and left repeated voicemails. She indicated she then received a final email in which Defendant stated, "I know both your parents are deceased, . . ., and you live alone." The victim also testified that as a result of the messages from Defendant she suffered from panic attacks and had an alarm system put in her house. She also testified that in February of 2015 her tires were slashed, however, she acknowledged during cross-examination that she did not actually see the person who slashed her tires.

At CC2015-4748 the victim testified that she was contacted by Defendant, who[m] she did not know, through Facebook in June of 2014. She testified Defendant began by periodically messaging her hello but then asked her out and she told him that she wasn't interested. When he continued to contact her she told him to stop and then blocked him on Facebook. Defendant subsequently created a second Facebook address and again began contacting her with obscenities and threats. Defendant's messages were identified and offered into evidence. The victim testified that:

> He threatened to gut my son and make me watch him bleed out. He threatened to carve a smiley face on my forehead, to beat me to basically death until I bleed. He quoted lyrics from a song, the sweetest revenge will be death.

Defendant also communicated with the victim's son which caused her to be concerned about not only her safety but her son's also. On cross examination the victim testified that she did initially respond to some of Defendant's threats and insulted him in return because of the threats.

The Commonwealth also presented the testimony of Detective Joseph Brown of the Pittsburgh Police who testified that both victims identified Defendant from photo arrays. Detective Brown also testified that Defendant admitted contacting both of the victims and making inappropriate statements to them but denied slashing the first victim's tires.

Defendant testified that he met the first victim at the shoe store and had a coffee date with her and that at one point he called her at work and she "screamed" at him and after that he "may have sent some more messages." As to the second victim, Defendant testified that she posted some of his messages on social media and as a result, while intoxicated, sent her "ugly messages." When confronted with the written messages, Defendant repeatedly indicated that he did not recall what he stated as he was intoxicated but that he could not dispute the written messages. Defendant denied that he slashed the car tires on the victim's car.

Trial Court Opinion, 7/10/17, at 2-4 (citations to transcript omitted).

The trial court found Appellant guilty of all charges except criminal mischief, and immediately sentenced him to two concurrent periods of five years probation for stalking and terroristic threats.[1] Following a timely notice of appeal and compliance with the trial court's order to file a Pa.R.A.P. 1925(b) statement, the trial court authored its responsive opinion and the matter is ready for our review. Appellant raises two issues:

I.    Was the evidence insufficient as a matter of law to convict [Appellant] of terroristic threats where the Commonwealth's evidence demonstrated only that he made mere spur-of-the-moment threats which resulted from anger in the course of a heated dispute, not that he intended to terrorize or acted with reckless disregard for the risk of causing terror?

II.   Was the evidence insufficient as a matter of law to convict [Appellant] of stalking where the Commonwealth's evidence demonstrated only that he made repeated contact with the complainant in an attempt to determine their romantic status but did not possess the intent to cause fear or distress?

Appellant's brief at 5.

Both issues present challenges to the sufficiency of the evidence supporting the convictions. Our standard of review is well-settled. Whether the evidence was sufficient to sustain the charge presents a question of law. Our standard of review is de novo and our scope of review is plenary. Commonwealth v. Walls, 144 A.3d 926, 931 (Pa.Super. 2016) (citation omitted). In conducting our inquiry, we

_____

[1] No further penalty was imposed for the remaining charge of harassment.

examine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, support the jury's finding of all the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence.

Commonwealth v. Doughty, 126 A.3d 951, 958 (Pa. 2015).

We address Appellant's claims in order. "The elements necessary to establish a violation of the terroristic threats statute are: (1) a threat to commit a crime of violence; and (2) that the threat was communicated with the intent to terrorize[.]" Commonwealth v. Walls, 144 A.3d 926, 936 (Pa.Super. 2016) (citation omitted). We have recognized that the statute does not punish "statements in the context of a heated discussion." Commonwealth v. Walker, 836 A.2d 999, 1001 (Pa.Super. 2003). However, the mere fact that statements were made out of anger does not render the speaker incapable of forming an intent to terrorize. Id. We examine the totality of the circumstances in determining if Appellant had the necessary mens rea. Commonwealth v. Reynolds, 835 A.2d 720, 730 (Pa.Super. 2003).

Appellant concedes that the statements were in the nature of a threat to commit violence. He asserts that the Commonwealth failed to present sufficient evidence to permit the trial court to find, beyond a reasonable doubt, that those statements were made with the intent to terrorize. According to Appellant, the totality of the circumstances demonstrates that he simply "responded poorly to the romantic rejection." Appellant's brief at

16. Appellant attaches great significance to the victim's concession that she participated in some insulting exchanges with Appellant. The victim testified that after Appellant called her a b\*\*ch and a whore, she insulted him in return. When Appellant persisted, she told him that she would take screenshots of his comments and post them on her publicly-available Facebook page. She followed through with that promise, and then blocked him from communicating with her:

> A. He kept inboxing me, and I fed into it, and I told him that I would shot screen everything if he didn't leave me alone and stop inboxing me. I would shot screen everything and put it on my Facebook timeline, and I did it because he still kept inboxing me. And then he talked about my children in the Facebook conversation. So after that, I blocked him. And a couple months later -- well, into January 2015, I got a Facebook request from a page called Oh MG[.]

N.T., 10/6/16, at 26-27.

As indicated by the trial court's factual findings, Appellant conceded to the investigating police officers that he created the "Oh MG" account and utilized it to circumvent the block. Having succeeded in evading Ms. Law's attempts to ignore him, Appellant proceeded to further berate and threaten her. The nature of his comments significantly escalated.

> He threatened to gut my son and make me watch him bleed out. He threatened to carve a smiley face on my forehead, to beat me to basically death until I bleed. He quoted lyrics from a song, the sweetest revenge will be my death.

Id. at 27.

Appellant's own testimony establishes that he contacted Ms. Law after discovering that she posted evidence of his prior interactions. "I was just acting out of[,] just response to someone messaging me saying that they saw me on her social media page." Id. at 50. Appellant's communications with Ms. Law were introduced into evidence, and included the following threats. "[D]on't f***ing lie to me. You didn't delete it, you f***ing shit talking b**ch. Women like you are the reason Bridgeville LA Fitness[2] got shot up, you f***king s**t talking c**t." Id. at 51. Appellant also told Ms. Law, "I just want to watch you bleed, you s**t talking piece of s**t whore. If I ever see you, I swear to God I will beat the f*** out of you. I don't care about hitting you because you're a woman. You deserve to f***ing die or get the s**t beat out of you." Id. at 53.

We hold that the totality of the circumstances easily justify a finding that the threats were intended to terrorize and were not simply made in the spur of the moment. Appellant cites Commonwealth v. Kidd, 442 A.2d 826 (Pa.Super. 1982) (insufficient evidence for terroristic threats where appellant, while under arrest, repeatedly shouted obscenities and screamed threats to kill the police with machine guns if given a chance) and Commonwealth v. Sullivan, 409 A.2d 888 (Pa.Super. 1979) (insufficient

_____

[2] On August 4, 2009, a man entered an exercise class at that facility and opened fire, killing three women before committing suicide.

evidence for terroristic threats where defendant threatened to kill sheriff) as support for the notion that his statements were spur-of-the-moment threats.

This case is nothing like those two precedents when accounting for the totality of the circumstances. The emphasis in those and related cases on anger and spontaneity is that the comments truly are made in the heat of the moment, and do not indicate premeditation. For instance, in Walls, supra, we vacated a conviction for terroristic threats where the appellant approached an assistant district attorney at a store and accused her of sending him to jail for a crime that he did not commit. As he was escorted out of the store, he shouted at the prosecutor that she should die. In reviewing the sufficiency of the evidence to support the conviction, we summarized the relevant principles:

> When two parties have an unplanned, heated confrontation, a threat made during the confrontation is often a spur-of-the-moment threat made during a period of transitory anger. For example, in Commonwealth v. Sullivan, 269 Pa.Super. 279, 409 A.2d 888 (1979), the defendant called the state police and threatened to kill the local sheriff. Id. at 888–889. The next day, the defendant encountered the local sheriff on the street, and during a shouting match, Appellant threatened to kill the sheriff. Id. at 889. The defendant was convicted of two counts of terroristic threats—one count for each incident. On appeal, this Court reversed and found that the evidence was insufficient to find Appellant guilty on either count. As to the second count, involving the defendant's encounter with the sheriff, this Court held that the threat was made as part of a chance argument on a public street and that the defendant did not have the settled purpose of terrorizing the local sheriff. See id. at 889–890.
>
> . . . .

What we find instructive about *Sullivan*, however, is that, as in the case at bar, the defendant encountered an official in public, a heated confrontation followed, and the defendant made a threat during that heated confrontation. Thus, it was the chance nature of the parties' meeting and the spontaneous anger that the encounter instilled in the defendant that links the facts in the present case to those before this Court in *Sullivan*. Just as *Sullivan* found the evidence insufficient to support a terroristic threats conviction, we do so here as well.

*Id.* at 937. We further noted that the appellant "did not specifically threaten harm to [the victim] presently or in the future." *Id.* at 938.

The circumstances under which the instant statements were made are nothing like those in *Kidd*, *Sullivan*, and *Walls*. Appellant's comments were not spontaneously made in the course of a real time conversation with Ms. Law, nor were they the product of a chance encounter. Instead, Appellant sent the aforementioned threats only after learning that Ms. Law had published his comments and named him. The evidence amply demonstrates that he intended to terrorize her as retribution for that action, in addition to persuading her from doing it again by threatening violence for non-compliance. He specifically threatened future harm, and stated he would kill her if he saw her. See *Commonwealth v. Fenton*, 750 A.2d 863, 865 (Pa.Super. 2000) (reviewing terroristic threats conviction and noting that defendant "clearly spent a long time reflecting upon his frustrations, and his threats cannot be characterized as less than premeditated and deliberate"). We thus agree with the Commonwealth's argument that the evidence supports a finding that Appellant "made a

premeditated and deliberate decision to create a fake Facebook page in order to re-engage Ms. Law based on the screen shots she had posted earlier." Commonwealth's brief at 15. That scenario is far removed from a situation where the two parties had an unplanned, ill-tempered confrontation. Accordingly, Appellant's challenge fails.

We now examine the sufficiency of the evidence supporting the conviction for stalking. Appellant was charged under the following statutory language:

> (a) Offense defined.--A person commits the crime of stalking when the person either:
>
> > (1) engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person;

18 Pa.C.S. § 2709.1(a).

Like the foregoing challenge, Appellant's argument is limited to intent. He concedes that his actions constituted a course of conduct, but avers that those actions were the result of "[Appellant] desir[ing] to find out what soured their burgeoning relationship." Appellant's brief at 12. Appellant claims that his repeated messages were not motivated by an intent to cause substantial emotional distress; "their cause and subject matter is easily deduced – the end of the potential romantic relationship between himself and Heidkamp." Appellant's brief at 26.

We agree with the Commonwealth that Appellant's argument misapplies the standard of review. Appellant assumes that his version of events, i.e. that his repeated calls were motivated by an innocent desire to ascertain why their relationship fizzled, must be credited as true when assessing whether there is sufficient evidence of intent. He acknowledges that he repeatedly contacted Ms. Heidkamp and used foul language, but maintains that we must consider those actions "in the context in which they occurred." Appellant's brief at 25. That is true, but nothing requires this Court to credit Appellant's own self-serving testimony in considering that context. In fact, our standard of review requires the opposite by tasking this Court with reviewing the evidence in light of all reasonable inferences drawn in favor of the Commonwealth.

Moreover, Ms. Heidkamp owed Appellant no explanation for why she wished to stop speaking to him, and he was not entitled to pester her for answers. Appellant was undeterred by her clear directions to cease contact. He acknowledges that Ms. Heidkamp blocked his phone number and that he circumvented the block by using another phone number, but claims that he "would not have been aware that Heidkamp blocked his number[.]" Appellant's brief at 26. But of course he was aware of that fact; that is precisely why he used another phone and "left . . . voice mails stating why did you block me[?]" N.T., 10/6/16, at 17.

Furthermore, we must examine the totality of the circumstances in ascertaining Appellant's intent, and Appellant's messages were aggressive in nature after Ms. Heidkamp tried to prevent further contact. He insulted her, and informed her that he knew Ms. Heidkamp's parents were dead and that she lived alone. Moreover, the latter comment regarding the victim's parents was sent to the victim's email address, which she did not disclose to him. We find that this evidence establishes an intent to cause substantial emotional distress, as defined by the statute. 18 Pa.C.S. § 2709.1(f) (defining "emotional distress" as "A temporary or permanent state of mental anguish.").

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/30/2018

- 12 -