J-S03006-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| AARON H. JOHNSON, | |
| Appellant | No. 2870 EDA 2017 |

Appeal from the Judgment of Sentence Entered August 4, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0010282-2016

BEFORE:  BENDER, P.J.E., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MARCH 27, 2019**

Appellant, Aaron H. Johnson, appeals from the judgment of sentence of an aggregate term of 5 years' probation, imposed after he was convicted of one count each of simple assault (18 Pa.C.S. § 2701) and terroristic threats (18 Pa.C.S. § 2706(a)(1)).  Appellant challenges the sufficiency of the evidence to sustain his conviction for terroristic threats.  We affirm.

The facts which led to Appellant's convictions are set forth by the trial court in the following portion of its Pa.R.A.P. 1925(a) opinion:

> On August 1, 2016, the [c]omplainant was at her home in the city and county of Philadelphia.  [Appellant] resided there with the [c]omplainant, his maternal grandmother ("Complainant").  On this particular day, an altercation arose between [] Complainant and [] Appellant.  [] Complainant wanted Appellant's friend to leave so she went to Appellant's room and told him that his company had to leave.  Appellant told [] Complainant, "Bitch, I hope you fall down the steps and break your neck[,]" and [C]omplainant responded she would call police.  Once downstairs, Appellant threw [] Complainant's newspaper and said "bitch, you

are something. I'll pick this chair up and bust you in your head." Appellant continued to pick up a dining room chair but did not hit [] Complainant with it. [] Complainant sprayed roach spray at Appellant while he picked up the chair.

Later on the same day, [] Complainant's daughter came over. Appellant and Complainant started to tussle because [] Complainant wanted to throw away a bed in his room. [] Complainant described "tussling" as grabbing her forearms and shaking her. [] Complainant was on the front porch attempting to get the paper and called Appellant "honorary"[1] [to] which Appellant said "bitch, you're crazy or something like that." Appellant then continued to pick up the chair and said, "I ought to bust you in your fucking head with this." Complainant went to get a [Protection from Abuse ("PFA") Order]. After getting home with the PFA, the second tussle started where Appellant threw her on the bed and she twisted her rib area causing pain. Appellant had her arms while she was trying to get him off of her and she ended up with a bruise. The incident stopped when Complainant's daughter got him out of the house after he tore everything up. Police Officer Garfield indicated on his police paperwork that this was a verbal dispute and Complainant was visibly upset, crying, and shaking.

Trial Court Opinion ("TCO"), 8/22/18, at 2-3 (unpaginated; citations to record omitted).

Based on the aforementioned evidence presented at a non-jury trial on August 4, 2017, Appellant was found guilty of the crimes stated *supra*, and was sentenced by the court to 5 years' probation. On September 5, 2017, Appellant filed a timely notice of appeal, followed by a timely, court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant presents the following sole issue for our review:

---

[1] The transcript reflects the word "honorary," **see** N.T. Trial, 8/4/17, at 16; however, we presume that the intended word was "ornery."

- 2 -

Was not the evidence insufficient to support Appellant's conviction on the charge of terroristic threats insofar as there were no threats to commit any crime of violence with the intent to terrorize another but rather any statements made were the product of transitory anger of the sort that does not show a settled intent to terrorize and thus cannot form the basis for a conviction of this offense?

Appellant's Brief at 4.

To begin, we note our standard of review:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Koch*, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted).

The crime of terroristic threats is defined as follows:

**§ 2706. Terroristic threats**

**(a) Offense defined.—**A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:

(1) commit any crime of violence with intent to terrorize another;

(2) cause evacuation of a building, place of assembly or facility of public transportation; or

(3) otherwise cause serious public inconvenience, or cause terror or serious public inconvenience with reckless disregard of the risk of causing such terror or inconvenience.

18 Pa.C.S. § 2706.

As this Court has previously explained, for a defendant to be convicted of terroristic threats:

> "the Commonwealth must prove that 1) the defendant made a threat to commit a crime of violence, and 2) the threat was communicated with the intent to terrorize another or with reckless disregard for the risk of causing terror." ***Commonwealth v. Tizer***, … 684 A.2d 597, 600 ([Pa. Super.] 1996). "Neither the ability to carry out the threat, nor a belief by the person threatened that the threat will be carried out, is an element of the offense." ***In re J.H.***, 797 A.2d 260, 262 (Pa. Super. 2002). "Rather, the harm sought to be prevented by the statute is the psychological distress that follows from an invasion of another's sense of personal security." ***Tizer***, 684 A.2d at 600.

***Commonwealth v. Beasley***, 138 A.3d 39, 46 (Pa. Super. 2016) (quoting ***Commonwealth v. Reynolds***, 835 A.2d 720, 730 (Pa. Super. 2003)).

Here, Appellant asserts that the evidence was insufficient to support his terroristic threats conviction, because his statements to Complainant were "made out of transitory anger, without a settled intent to terrorize[.]" Appellant's Brief at 10. Appellant states that he and Complainant were "involved in an hours-long sporadic domestic argument that occasionally turned, if not actually violent, at least physical." ***Id.*** at 11. Appellant acknowledges that during the course of their interaction, he told Complainant "that he hoped she would fall down the stairs and break her neck and that he should strike her with a chair he had picked up." ***Id.*** (internal quotation marks omitted). While Appellant admits that his stating that he should strike Complainant with a chair was a threat, he insists that it was "a spur-of-the-moment threat resulting from anger of the sort explicitly meant to be excluded

- 4 -

from criminal liability." *Id.* at 13. In support of his argument, Appellant points to the Official Comment to section 2706, which states that section 2706 "is not intended to penalize mere spur-of-the-moment threats which result from anger." *Id.* (citing 18 Pa.C.S. § 2706, Official Comment—1972).

Appellant's argument is founded on his claim that he lacked the requisite intent to terrorize. Thus, the real issue, here, is whether the Commonwealth presented sufficient evidence to establish the required *mens rea*, not whether Appellant made the statements in the context of a heated dispute. *See Commonwealth v. Walker*, 836 A.2d 999, 1001 (Pa. Super. 2003) (discussing the focus on the *mens rea* element in determining whether evidence is sufficient to support terroristic threats conviction). "Being angry does not render a person incapable of forming the intent to terrorize." *Id.* (quoting *Commonwealth v. Fenton*, 750 A.2d 863, 865 (Pa. Super. 2000)).

In finding that the Commonwealth provided sufficient evidence to establish the requisite *mens rea* to support Appellant's conviction of terroristic threats, the trial court opined:

> Here, there was an altercation between Appellant and [Complainant]. He told her "Bitch, I hope you fall down the steps and break your neck" and when she replied by saying she would call the police, [A]ppellant threw the newspaper and said: "bitch, you are something. I'll pick this chair up and bust you in your head." Appellant continued to pick up the dining room chair but did not hit [] Complainant with it. *His words coupled with his actions show that* [] [A]ppellant intended to terrorize which is an element of terroristic threats. The threat cannot be considered a product of transitory anger.

TCO at 4 (unpaginated) (emphasis added).

- 5 -

Moreover, the trial court compared the instant matter to the scenario in *Commonwealth v. Anneski*, 525 A.2d 373 (Pa. Super. 1987), in which this Court found that the appellant, who was convicted of terroristic threats, lacked a settled purpose to terrorize the other person. In *Anneski*, the appellant said she would "get a gun and use it" after the other woman threatened to hit the Anneski children with her car. The appellant's "threat" to get a gun was considered to be a spur-of-the-moment threat resulting from transitory anger prompted by the other woman's threat to run over her children. *Id.* at 376. By contrast, in the present case, Complainant merely asked Appellant's friend to leave, which prompted Appellant's threats and his action of picking up a chair. The trial court proffered that the original request in the instant matter "is not a request that would insight transitory anger" and, therefore, concluded "Appellant made the threats with an intent to terrorize [] Complainant." TCO at 4-5 (unpaginated).

Additionally, the court recalled:

In another altercation that day, [] Complainant and Appellant were tussling where Appellant physically grabbed her forearms and began shaking her. After calling [him] "honorary[,]"[2] [Appellant] picked up a chair and said "I ought to bust you in your fucking head with this[.]" … [T]he threat of busting in someone's head and then raising a chair up would give rise to an inference of intent to terrorize.[3] This prompted Complainant to go and get a PFA. Again, the threatening words along with a physical action

---

[2] *See* n.1, *supra*.

[3] *See Commonwealth v. Butcher*, 644 A.2d 174 (Pa. Super. 1994) (determining the appellant's words and conduct, when viewed together in context, could be reasonably interpreted as a threat to assault the victim).

matching those threats indicate Appellant made threats to commit a crime of violence and intended to terrorize [C]omplainant. After getting home with the PFA, another tussle began and Appellant threw Complainant on the bed and she twisted her rib area which caused her pain. Appellant had her arms and she tried to free herself from Appellant's grip. A police officer who responded expressed on his paperwork that [] Complainant was visibly upset, crying, and shaking.

*Id.* at 5 (unpaginated).

Based on our review of the facts in the light most favorable to the Commonwealth as the verdict winner, we conclude there was sufficient evidence to support the trial court's finding that Appellant committed terroristic threats. Therefore, we uphold Appellant's conviction.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/19