J-S24013-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLARD STANLEY BIDDING, JR. | : | |
| | : | |
| Appellant | : | No. 1222 MDA 2022 |

Appeal from the Judgment of Sentence Entered August 4, 2022
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0002177-2021

BEFORE:   BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:              **FILED SEPTEMBER 5, 2023**

Appellant, Willard Stanley Bidding, Jr., appeals from the aggregate judgment of sentence of 28 to 56 months' incarceration, imposed after a jury convicted him of terroristic threats, aggravated assault, simple assault, and resisting arrest.  On appeal, Appellant solely challenges the sufficiency of the evidence to sustain his terroristic threats conviction.  After careful review, we affirm.

From the trial court's opinion, we glean that Appellant's conviction for simple assault arose from his intentionally striking an individual with his vehicle.  **See** Trial Court Opinion (TCO), 10/25/22, at 4 (unnumbered).  His aggravated assault and resisting arrest convictions stemmed from the fact that, when Officer Nicholas Riebel and other officers arrived at the scene of

_____

[*] Former Justice specially assigned to the Superior Court.

that assault and attempted to arrest Appellant, Appellant "was 'body checking' and ramming his body into police officers[,] including Officer Riebel," and "[h]e also spit blood in Officer Riebel's face." *Id.* "While being carried from the police vehicle to the holding cell, [Appellant] was thrashing his body and trying to kick Officer Riebel and other officers." *Id.*

To support Appellant's charge of terroristic threats, the Commonwealth presented evidence that, as Officer Riebel drove Appellant to the police station, Appellant "was … very irate. Screaming, yelling. … Thrashing his body around. … He was just telling us, [']You're gonna get yours when I get out. You're gonna find out.['] Just very belligerent, multiple curse words." N.T. Trial, 6/15/22-6/16/22, at 51. Officer Riebel interpreted Appellant's remarks as indicating that "he was gonna do bodily harm towards me when he gets out." *Id.* at 52.

Then, when they arrived at the police station, Appellant refused to get out of the vehicle. *Id.* As Officer Riebel and others forcibly removed him and carried him to a cell, he was spitting, thrashing his body around, and kicking and throwing Officer Riebel into the metal doors and concrete walls. *Id.* When Appellant was finally secured in the cell, he "made threats that … he's gonna see us all off duty and he's gonna get us. There's gonna be nobody left." *Id.* at 52-53. Officer Riebel testified that he "took that as he's gonna do me bodily harm afterward. I actually felt like he would[,] considering he just hit somebody for no reason with a vehicle." *Id.* at 53.

At the close of Appellant's jury trial in June of 2022, he was convicted of the above-stated crimes. On August 4, 2022, the court sentenced Appellant

> to 14 to 28 months[' incarceration] on the aggravated assault conviction, a consecutive term of 6 to 12 months[' incarceration] on the terroristic threats conviction, a consecutive term of 6 to 12 months[' incarceration] in the simple assault conviction, and a consecutive term of 2 to 4 months[' incarceration] on the resisting arrest conviction. All of the sentences were within the standard range of the sentencing guidelines and the aggregate sentence was 28 to 56 months[' imprisonment].

TCO at 1 (unnumbered).

Appellant filed a timely notice of appeal, and he complied with the court's subsequent order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Herein, Appellant states one issue for our review: "Did the Commonwealth fail to establish the guilt, beyond a reasonable doubt, of [Appellant] for the offense of terroristic threats when the statements made by [Appellant] were ambiguous and did not constitute a threat or demonstrate an intent to terrorize?" Appellant's Brief at 3.

To begin, we note our standard of review for a challenge to the sufficiency of the evidence:

> In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. ***Commonwealth v. Moreno****,* 14 A.3d 133[, 136] (Pa. Super. 2011). Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. ***Commonwealth v. Hartzell****,* 988 A.2d 141[, 143] (Pa. Super. 2009). The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt. ***Moreno, supra*** at 136.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011).

Appellant was convicted of terroristic threats as defined in 18 Pa.C.S. § 2706(a)(1), which states:

> **(a) Offense defined.--**A person commits the crime of terroristic threats if the person communicates, either directly or indirectly, a threat to:
>
> > (1) commit any crime of violence with intent to terrorize another[.]

18 Pa.C.S. § 2706(a)(1). In discussing the offense of terroristic threats, this Court has explained:

> "The purpose of [section 2706] is to impose criminal liability on persons who make threats which seriously impair personal security or public convenience. It is not intended by this section to penalize mere spur-of-the-moment threats which result from anger." 18 Pa.C.S.[] § 2706 cmt. As this Court has stated, "the real issue [i]s whether the Commonwealth presented sufficient evidence to establish the required *mens rea*, not whether [the appellant] made the statements in the context of a heated discussion. Being angry does not render a person incapable of forming the intent to terrorize." ***Commonwealth v. Walker***, 836 A.2d 999, 1001 (Pa. Super. 2003), *appeal denied*, … 853 A.2d 361 ([Pa.] 2004) (internal quotation marks and citation omitted). We must consider the totality of circumstances to determine if [an a]ppellant had the necessary *mens rea.* ***See Commonwealth v. Reynolds***, 835 A.2d 720, 730 (Pa. Super. 2003) (citation omitted).

***Commonwealth v. Walls***, 144 A.3d 926, 936–37 (Pa. Super. 2016).

In the instant case, Appellant claims that the Commonwealth's evidence failed to prove the intent element of terroristic threats "for two … reasons. First, the statements were ambiguous. Second, based on evaluating the

timeline, they were transitory and made out of anger." Appellant's Brief at 14. We will address each of Appellant's arguments in turn.

First, Appellant argues that the statements he made to Officer Riebel were "non-threatening and ambiguous" when considering the totality of the circumstances. *Id.* at 16. For instance, Appellant stresses that his at-issue statements to Officer Riebel were made only when he was handcuffed and separated from the officer, either in the rear of the police vehicle or in the holding cell. In other words, none of the statements "were made when the officers were in direct physical contact with … Appellant." *Id.* at 15-16. Appellant also points out that Brian Oppelt, the chief of the fire department, "testified that he witnessed … Appellant, before being placed in the transport vehicle, smash his head against the vehicle and[] then[] turn to the officers and say 'why'd you do that to me.'" *Id.* at 15 (citing N.T. Trial at 71). According to Appellant, when considering

> the testimony of Mr. Oppelt and the location of where the statements were made, the statements become non-threatening and ambiguous. … Appellant's statements could be interpreted to mean he intended to bring a civil action against the officers and that, when he was done, they would no longer have their jobs and there would be nobody left. The meaning and intent of these statements are as likely to be non-criminal and non-violent as [they are] to be a threat to commit a crime of violence.

*Id.* at 16 (quotation marks and citation omitted).

Appellant's argument is unconvincing. It was reasonable for the jury to conclude that Appellant threatened to commit a crime of violence – namely, assault – against Officer Riebel with the intent to terrorize him. The fact that

Appellant was secured when he made these statements is inconsequential, especially considering that, just prior to making his threats to Officer Riebel, Appellant had spit blood on the officer, 'body checked' and rammed his body into the officer, kicked the officer, and threw the officer into concrete walls and metal doors while thrashing his body. In other words, Appellant physically assaulted Officer Riebel, and was ultimately convicted of aggravated assault for those actions. *See* TCO at 3-4 (concluding the evidence was sufficient to sustain Appellant's aggravated assault conviction for these actions against Officer Riebel). Given this context, it was completely reasonable for the jury to conclude that Appellant was threatening to commit a crime of violence, rather than a civil action against the officers, when he said that he would "see [the officers] off duty and he's gonna get [them]. There's gonna be nobody left." N.T. Trial at 52-53. Therefore, Appellant's argument is meritless.

Second, Appellant contends that, "[e]ven if not ambiguous, the statements were transitory." Appellant's Brief at 16. He initially discusses the "lead up" to his statements to Officer Riebel, explaining that arguments had ensued all day between Appellant and other residents living near him concerning parking around their homes. *See id.* at 5. Police were called by Appellant and his family multiple times that day, but they were told there was nothing the police could do. *Id.* at 15. Appellant explains that,

> [d]espite what had been going on all day, when the officers first encountered … Appellant, he was "very calm," did not resist arrest, and cooperated with being handcuffed. He remained that way when leaving his daughter's residence and when walking down the driveway towards the street of the front residence. He

did not become belligerent until he was not just confronted with being placed in a patrol vehicle but, also, confronted by the presence of 20 to 30 people who were organized near the patrol vehicle and shouting back at him. At that point, … Appellant became angry and belligerent.

In addition, according to Officer Riebel's objective observations, … Appellant was intoxicated and thrashed and banged his head against the divider in the vehicle and the holding cell bars at the station. … Appellant made the statements purely out of anger, set off by the day's events and the organized crowd, and while intoxicated. Though he made the statements, they did not continue after his final statement in the cell, … likely because … Appellant calmed down and sobered up.

*Id.* at 16-17.

Appellant claims that the circumstances of this case are comparable to

*Walls*. There,

[a]t approximately 6:00 p.m. on September 19, 2013, Philadelphia County Assistant District Attorney Kathryn Brown ("ADA Brown") was shopping at a store located in Liberty Place Mall. At that time, she heard [Walls] yell[,] "Hey, ADA[,]" from the store's entrance. [Walls] then called ADA Brown, identified himself by name, and shouted that ADA Brown prosecuted him, and ultimately sent him to jail, for a crime he did not commit.

[Walls] then entered the store and threw his hat. He continued to yell that his incarceration caused his grandmother's death as he approached ADA Brown. Ultimately, [Walls] got to within one foot of ADA Brown and his voice took on a more serious tone. ADA Brown stepped back and told [Walls] to get away from her. Store employees and customers intervened and escorted [Walls] from the store. As [Walls] was escorted out of the store, he shouted at ADA Brown that she caused his grandmother's death and that she should be next. During the encounter, [Walls] never made physical contact with ADA Brown and she sustained no injuries resulting from her interaction with [Walls].

*Walls*, 144 A.3d at 930. In concluding that there was insufficient evidence to

prove that Walls intended to terrorize ADA Brown, we reasoned:

> [T]he evidence only support[ed] the conclusion that [Walls] made a spur-of-the-moment threat as the result of anger during a random confrontation at a local shopping mall. [Walls] did not specifically threaten harm to ADA Brown presently or in the future. Instead, [Walls] made a very brief statement that the trial court construed as a threat while being led away from ADA Brown. All of these circumstances indicate that [Walls] made a spur-of-the-moment threat that does not evince a settled intent to terrorize. Thus, there was insufficient evidence to find [Walls] guilty of making terroristic threats.

*Id.* at 938.

Unlike in ***Walls***, the present case does not involve a chance encounter, followed by a heated confrontation and a spur-of-the-moment threat. Instead, Officer Riebel responded to a call that Appellant had intentionally struck another individual with his car. Appellant was obviously irate when being transported to the police department, and he threatened that Officer Riebel was "gonna get yours" when Appellant was released from custody. N.T. Trial at 51. Even if this threat was made while Appellant was in a 'belligerent' state, he had time to calm down during the ride to the police department. Nevertheless, once there, he refused to exit the police vehicle and then physically assaulted Officer Riebel as he was being forcibly transferred from the car to a jail cell. Once inside the cell, Appellant again repeated the same threat that he would "get them[,]" meaning Officer Riebel and the other officers, and threatened there would be "nobody left." *Id.* at 53. We conclude that these facts are distinguishable from the single, spur-of-the-moment threat at-issue in ***Walls***, and that Appellant's repeated threats to the officer were not made during a transitory, or brief, state of anger. Instead, the jury could reasonably conclude that Appellant made the threats with a settled

intent to terrorize Officer Riebel.  Thus, his conviction of terroristic threats is supported by sufficient evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/05/2023